oral argument not to exceed 15 minutes per side, Darren Thompson for the appellant. Good morning, Your Honors. I'm Darren Thompson from the Federal Public Defender Office in Cleveland, Ohio. I'd like to reserve five minutes for rebuttal. May it please the Court. Jeff Reichert, a truck driver, ran a business modifying game consoles for people. Modified game consoles can be used in a variety of ways, as diverse as playing DVDs or surfing the Internet or playing video games that a person writes on their own, playing video games purchased in another country, and also playing pirated video games. The key issue at trial was whether or not Mr. Reichert was aware that by selling these games he was violating the law. He was violating what's called the DMCA, the Digital Millennium Copyright Act. There were no direct statements from Mr. Reichert, no direct evidence indicating that he was aware that he was violating the law. There was no evidence, in fact, that he was not so aware. He conducted this business openly, under his own name. He took PayPal for his payments. He had money sent directly to his home, deposited in his own checking account, had business cards made up. Did he advertise what he was doing? He did indeed, Your Honor. The illegal activity? Well, he believed it to be legal activity, but yes, Your Honor. And he openly solicited business. In fact, at one point, in email exchanges, in an effort to get himself employed at Cliff's Racer Video Games store as a video game modder, he indicated to the company, he indicated at that point, as long as we're not flashing BIOSes, which is a modification to the basic input operating system, input-output system, rather, of the computer that is inside the video game, then it's totally legal. A direct statement from him indicating he thought this was legal. Where did he get that idea? There was no evidence at trial. I could speculate or I could indicate, but there is no evidence where he, and there was no evidence, where he formed his opinion regarding this interpretation of law or other interpretations of law that he indicated to people. For example, he indicated... Wouldn't someone normally think that if you're facilitating someone else's violating the law, you might be violating the law as well? Wouldn't that be sort of a background assumption? That certainly is the government's argument, Your Honor. In rebuttal, I would suggest two reasons why that may not be the case, or why that might not affect the court's decision. First, the basic premise. If you are facilitating illegal conduct, shouldn't you know that what you're doing is illegal? It's like if you sell stolen property or something like that. It's not stealing, but most people would assume that that was illegal unless someone advised them that it wasn't. I would suggest it's more akin to selling a gun to someone, because it's a product, it's a thing that can be used legally or illegally. It depends a little bit if that's the distinction you're drawing between how many legal and illegal uses. If something is almost always used for illegal purposes, then you might think it's like one of these police radars to keep from being subject to police on the street. It's hard to think of too many legal uses for it. And I think those are actually legal to be sold, though. Depending on the state, I think there are places where you're allowed to have one. Well, I'm sure, but I'm not saying it's always illegal. Something like that where most people would think that most of the uses are for illegal purposes, you might have sort of a background assumption, unless it's countered by knowledge of the law, that it's probably against the law. It's just for purposes of trying to figure out how likely it is that he knew it was illegal. I have a few questions. Does the statute in Europe require that a student have full knowledge or evidence of those purposes? Should that be the case? With respect to the law, rather than the body, at the time of Mr. Nunda, was the law clear at the time of Mr. Nunda? Your Honor, with regard to full knowledge versus a reasonable, you know, a person should know this, the law is that he needs to have known. Just as in a tax case, you need to know that what you're doing is a violation of tax law. Copyright law is clear, and criminal copyright law is certainly no exception to general copyright law, which is that this conduct must have been committed willfully. Do you have anything more specific on that? Because this isn't exactly a copyright case. This is a facilitation of violation of copyright case. I mean, it would make sense that if you violate the copyright laws, you should know that it violates the copyright laws, but I'm not sure it follows that if you know that you're helping someone else violate the copyright laws, you need to know also that helping someone else violates the law violates the law, which is a different argument, right? And I think this gets to Judge Donald's second question also, is whether or not this was a settled state of law. At the time of our prosecution, there was only one prior case, I believe, that went to trial and ended up being dismissed either mid-trial or maybe immediately prior to trial. In that case, it was indicated that or held that willfully was going to be the standard. The government put forth a willfully standard in their proposed jury instruction. In doing so, they followed the rules, if you will, or the suggestion, if you will, from the Department of Justice in their intellectual property prosecution manual. Before we get into that, I want to make sure that Judge Donald is satisfied that you've answered both parts of her question. I think that question goes to the very heart of the defense, Your Honor, which is that this was an unsettled state of law. As Mr. Reichert indicated when he was arrested, it is a gray area. As I indicated, I cited in my brief, there were papers put out in the Cornell law journals, North Carolina law journals, referring to the use of mod chips. There are books on how to do this. There are videos on how to do it. These chips could be purchased on the Internet and shipped. Again, nothing had to be done surreptitiously. He didn't need to do anything. Are you saying this law is vague? If, for instance, he got a lawyer and the lawyer told him what the law said, that he couldn't be convicted of it because it's not clear whether installing and modifying chips is illegal? I'm not arguing that. I don't believe so, Your Honor. But I'd like to, if I could, follow Your Honor's hypothetical a moment. I'm asking you what issues you're appealing. I don't think that you are appealing a vagueness argument, are you? Absolutely not, Your Honor. But whether or not the law was clear, I believe, goes to whether or not Mr. Reichert was clear about whether or not he was violating it. That goes to the jury instruction issue? It does. Okay. I mean, that's what you're actually appealing. Right, Your Honor. It also goes to the issue of whether or not he should have been permitted to introduce his statements to his friend, Kevin Felsick, in which he indicated, I think this is legal. I think as long as I don't sell pirated games, I can sell the modified game console. And it circles back, really, to the example of, well, what about selling devices that detect police radar? That seems to be legal, although, as Judge Rogers notes, it doesn't have very much real legal application. I think another interesting example would be selling rolling papers, if you will, cigarette papers in convenience stores. Are you making the jury instruction argument or the admission of evidence argument? Both, Your Honor. But with regard, both of these facts get into whether or not the jury instruction first was misleading, second, was it confusing, and third, was it prejudicial? Well, let me ask this. The judge used the pattern instruction, which has three blank spaces in it. Is that correct? In the pattern, it has three blank spaces in it. Incorrectly used it, but yes, Your Honor. I understand, but nonetheless, he used it, and it has three blank spaces in it, right? One would infer that the same thing should be inserted into each of those blank spaces, but instead, one time he inserted was trafficking in technology primarily designed to circumvent technological measures designed to control access to work copyrighted under federal law. And the other is violating the DMCA, right? Right, Your Honor. All right. So even if it was required in all three instances to say violating the DMCA, I gather that's your position. At least in two of those positions, it did – in two of those insertions did say violating the DMCA. It's just because he didn't insert that in all three of them. That's the thrust of your argument. Is that correct? Exactly, Your Honor. Right. There's a preliminary question I have, which is why isn't the one that was inserted that was less favorable to you actually the law? I mean, I'm not understanding why willful shouldn't in this context mean ignoring or mean trafficking in technology primarily designed to circumvent measures designed to control access to copyrights. It isn't exactly what the government's arguing. The government's arguing the other one is sufficient, and I understand that argument. But I'm wondering about the preliminary question of why willful doesn't mean that. And I took your briefs mainly to say, well, willful means more than that because copyright violations have to be willful or have to be knowing that it's a violation of the copyright. Right, Your Honor. Does my question make sense? It does. And I think the reason why willful is interpreted and should be applied to include a knowledge that you're violating the law in this circumstance just as in every other area of copyright is because the law in this area is sometimes unsettled and almost always unclear. For example, Your Honor, if I may. Well, since your time is out, I just want to say, assuming that you're right, that that's an incorrect statement or not a complete statement of the law, why isn't it cured by the fact that it's correctly stated in the other two parts when the other two blanks are filled? Well, I guess the answer to that, Your Honor, is a jury is going to be faced with directly contradictory instructions. In one case, in one breath, the judge – No, you say you have to find A, and then a minute later you say you have to find A and B. That's not contradictory. You clearly have to find A and B because the second time they said A and B. That's not – but that mischaracterizes the instruction. The instruction says it's good enough if you find A, but then the second breath is, but remember, you have to find B. Well, wait a minute. Is it good enough to find A or not? Well, it says you have to find A, and it doesn't say good enough. A is, in the way I'm phrasing it, A is all you need to know is was he aware of a high probability that he was selling these game consoles? Not game consoles. No, it doesn't say that. With respect, it says that you know that you're selling these game consoles, and they are primarily designed to circumvent technological measures. So it's not just game consoles. You're selling game consoles to people, and you know that the primary reason for using them is to circumvent copyright law. Right? That's what it says. Designed to circumvent technological measures. In turn, designed to control access to work copyright under the federal law. Not every circumvention of a technological measure designed to prevent access is a violation of copyright law, Your Honor. If I purchase a game in Japan and use a device to access my lawfully purchased game, I have not violated copyright law. Well, but you've violated the DMCA, because that's how the statute is written. And I disagree with that, because I would need to willfully have violated the DMCA. I understand that. Thank you. Other questions? Thank you. Good morning. My name is Robert Kern, and I represent the Apple League of the United States. May it please the Court. Your Honor, with regards to the jury instruction issue, I guess the question is, first of all, whether deliberate ignorance instruction should have been given in the first place. And we respectfully submit that it was appropriate in this case to give it. And then, if so, what version of the instruction should have been given, whether it should have been the defendant's version or the government's version. The reason that it should have been given is that it's clear, based on statements that the defendant made, either to the undercover agent in emails, where he was communicating with his customers and other people on this Xbox forum, statements he made to the agent at the time that the search warrant was executed in 2007, that he knew that what he was doing was facilitating other people to violate the copyright law. The defendant goes to great pain to talk about the other possible uses for these modchips. They can be used for homebrew software developers. They can be used to turn your Xbox into a home entertainment system. The fact is, there was no evidence in the case that this defendant was doing any of those things with the modchip. The only evidence that was offered indicated that what he was doing was installing these chips into the video games for the purpose of enabling people to play pirated software. And we believe the evidence showed that he knew exactly that that's what they were doing with it because, in fact, in one of the emails that was admitted into evidence, the defendant tells the person at the other end of the email, in fact directs them to one of these BitTorrent websites in Europe, to go get pirated copies of video games. Are you talking about sufficiency of evidence now, or which issue are you addressing? I believe it's still with regard to the instruction, Your Honor. If you're talking about the instruction, let me ask you this. Doesn't the pattern instruction at least imply that those three dashed lines in there are supposed to have the same words in them? We're talking about ignoring the high probability that, I mean I don't have the version with the spaces in it, but there are three blanks in there, right? I believe so, yes, Your Honor. And it would read nicely if you just had some factual statement, plots into each one of them, but instead what the judge did was put one thing into one of them, and violating the DCMA in the other two. Is that correct? Well, I believe in the middle one, the way the instruction read was that if you're convinced that the defendant deliberately ignored a high probability that he was trafficking in technology, and then he tracks the statutory language. Then you find he knew he was violating the Digital Millennium Copyright Act, and I guess... And then down below it says, was aware of high probability that, and it's inserted, violating the Digital Millennium Copyright Act. I suppose one way to phrase your opponent's argument is that the words violating the DCMA should have been in all three blanks, and that not being in the first one, even though it was in the second and third one, is what makes the deliberate instruction incorrect. I think that's his argument. And I understand that that may be his argument. What I'm asking is, looking at it freshly without knowing what happened in this case, doesn't that model instruction at least admit of a reading that it's contemplated that the same words are supposed to be inserted in all three? That that's normally how it would work? Or am I reading the model wrong? I mean, you probably use the model more than I do. No, I don't think you're reading it wrong, but I think you have to look at the instruction in its totality. You can't just look at... No, I understand. So your argument is, if they stated it a little bit wrong in one of them, the other two make up for it. And the question is, was it clear to the jury what the standard was? And I think from reading this, there was no confusion on the part of the jury as to what they... So the jury would know that they had to conclude that he knew that trafficking in technology primarily designed to circumvent technological measures, etc., was criminal. And because there were other instructions that were given to them defining what the statute was as well. I mean, this was not the only place that that language showed up. Typically when the court goes through the jury instructions, there's instructions as to what the elements of the offense are, and in that instruction... Right, but this is the deliberate ignorance instruction. But they had already heard what the statute was, and it was referred to as, if you find that the government has proven each of these elements... Well, he has to have intent, but then the intent is defined to include deliberate ignorance, right? Right. In terms of... I would ask, if we're having to look at this, and there are some imminent questions raised about the meaning of these particular words in relation to the distribution of the other, doesn't that really undermine your argument that there was no... that the jury instructions were not deliberate? We can run for a couple of minutes, but I don't want to... I was wondering, I don't think you could say that it is clear... I think it's acknowledged that there were questions raised about the inclusion of the other. It wasn't as far as the failure of the other to communicate the truth. Does that undermine the fact that the jury instructions were deliberate? In fact, I think there's maybe only two blanks in the form. I don't have the pattern book in front of me, but in the paragraph where it says, now I want to explain something to you about a defendant's knowledge. No one can avoid responsibility. And then it says, if you were convinced that he deliberately ignored a high probability that he was... and then it tracks the statutory language, trafficking and technology primarily designed to circumvent, then you may find he knew he was violating the Digital Millennium Copyright Act. And then in the next sentence, next paragraph, but to find this you must be convinced beyond a reasonable doubt that he was aware of a high probability that he was violating the Digital Millennium Copyright Act. I don't... and again, I apologize, I don't have the pattern instruction book in front of me, so if it has three blanks, Judge Rogers, I certainly will... Well, I mean the first one is where the language from the statute is quoted, and the second one is the words violating the DCMA, and the third one is violating the DCMA, that's where the three blanks are. Well, I don't think that the way that the instruction was given was either confusing or was incomplete. I think that there was a clear... Yes. Yes, Your Honor. I believe that the 3B1.3 indicates that substantial education training or licensing may be enough, and I believe this court in Godman, although in Godman it struck down the enhancements being applied, but there's language that indicates that it doesn't have to be formal education, and it doesn't have to be a professional license involved, that it can be... there can be self-tutelage involved, and the evidence in this case was clear that Mr. Riker had been... What's your strongest case that something like this could fit within the enhancement? And while you're answering that, talk about the case of the statute, you know, 7.205, this appreciation of the enhancements. Well, I think the focus on all of the cases have looked at whether it's something that the ordinary person or someone with really very little training or skill could do, and if it is such a case, then it doesn't apply. I think Godman was a good example back when computer usage was more difficult. The enhancement may have been applied, but by the time Godman was decided, basically a sixth grader could run one of these software programs and create counterfeit checks. Godman said that it couldn't be applied in that case. And that's correct. I'm asking you what cases support your position, not cases that don't support his position. If you look at the Ninth Circuit case that was cited in Godman... Which case? And I think it was Peterson. Peterson involved someone who, through self-tutelage, had learned how to basically hack computers and did it so well that he took over control of a radio station's phone-in contest, you know, be the 12th caller and win a new Porsche. What about cases where there's some sort of sophisticated way of defrauding people, Ponzi schemes that are elaborate and complicated? I think that... Would those fit within the scheme, I thought, within that enhancement or not? Well, I guess it would depend on... I'm asking what the cases have said. Well, Your Honor, I have to confess I'm not familiar with all of the cases with regard, especially to the fraud situation, as to which this court has said applies and which does not. But here we're dealing with a technical skill. This is the taking a soldering iron and a computer chip and some wires and knowing how to install that into sophisticated, delicate electronic equipment so that you don't destroy the original equipment, but in fact you alter it in a way that enables users to violate the copyright law. And there was testimony in this case that what Mr. Riker was doing was very sophisticated. It was very difficult to do. Not the average Joe on the street could do this. In fact, a lot of the people who would contact him were people who had tried to do it and failed and had damaged or had screwed up their video games, and they had to send it to him to sort of... What's the underlying reason for why the sophisticated means should give you a bigger sentence? Well, it's a two-level enhancement to the guideline calculation. Yeah, I'm asking why did the Sentencing Commission put it in there is what I'm asking. My understanding is that situations where there's either licensing, training, or some special skill that's employed, that the folks who have that knowledge or who have that ability or who hold those positions should pay a higher price for their criminal conduct. Yeah, but why? Well, Your Honor, I don't know. I mean, they could say people in a certain age group should pay a higher price. Or people who, I don't know, people who come from big families. I mean, there's got to be some reason. Is it just an arbitrary kind of enhancement, or is there some underlying logic for it? Well, I'm sure there is logic, and I apologize. Well, it would be easier for us to know how far to take it if we knew why it was there, but you don't see any particular reason. I mean, I think with some of them it's obvious. I mean, if you're talking about a lawyer or a doctor or a sleep TA. But those are positions of trust. The thing says position of trust or sophisticated. Well, but it also talks about, I think, I'm pretty sure the application, though, gives examples of professionals who are licensed as well as pilots. So, for example, if you have someone who's running drugs and they're doing it in a car, there's no special skill involved in driving a car down I-75. But if you take that same person who's running drugs and they're a licensed pilot and they're flying the drugs in to the islands up in Lake Erie, that a special skill or the disadvantage... That makes sense. And presumably that would apply even if his license had expired. Right. But what's the reason for it now? That's my question. Okay, the pilot's a good example. It's a clear example. Why should a pilot be punished more than a driver? No idea. It's just arbitrary. I don't believe. No, it's not arbitrary. What's the reason? Well, I think that... Is it more culpable? I guess I may be having a senior moment, but I just... No, I think it's a hard question I'm asking you. I'm just curious what it is because it would help me to figure out what the answer to the... Well, I think it's because where someone has either education, training, or licensing... But our defendant has none of those. Well, he has education and training. He has no formal education. He's self-taught, right? And his training is self-taught as well. Well, with regards to the computers in general, there was testimony that he was in a technical program in high school. Did they teach him how to do this? Not to do mod chips, but the basics of electronics and computer repair. There was testimony from the witness that the defense called that he and the defendant, from the time that they were in high school, would build computers from scratch. They would buy motherboards. They would buy RAM. They would buy processors. And they would literally build the computer. That's from testimony from the defendant's own witness. I mean, you're going through all these things, and you're a professional. You're licensed. You have formal education. I mean, what you're all talking about doesn't seem to fit the standards. Well, but that's... But the case that this court relied on in Goodman... Godman, excuse me, out of the Ninth Circuit, that individual had no formal training skills either. It was someone who was self-taught in computer hacking, but did it to such a level or with such sophistication that they had skills which most, I would venture to say, 99% of the people out there couldn't possibly employ. The fact that Mr. Riker doesn't have a bachelor's degree in electrical engineering isn't the point. It's, as this court had indicated in Godman, that self-tutelage, you know, years or months, months or years of self-tutelage may be sufficient when you look at what it is that they're able to do. And if what they can do is something that everybody else or most everybody else cannot do, then the special skill enhancement would be appropriate. Sort of like very smart people who are very skilled should use those skills for the public good rather than to hurt the public. Or at least they shouldn't employ them. Sounds like something out of a 19th century novel. Sometimes old things are not bad. Right. Thank you. Thank you. Your Honor, I would have to respectfully disagree with the government regarding what was admitted into evidence in this case. There were extensive e-mail discussions introduced into evidence. They did include discussions of use of a modified Xbox for legal purposes. One specific comes to mind in which someone had e-mailed him indicating that his child or grandchild had been damaging discs. And one thing you can do with a modified Xbox is you can make a copy just using a CD burner of a video game and then you can play it. So you can back up your DVD or your video games so that if your child pours jelly on it or scratches it in some way that you have another copy. And incidentally, although you would be using a modified – a device designed to circumvent copyright, you would not be violating copyright law. And therefore – and you certainly would not be willfully violating the DMCA by doing so. With regard to the enhancement – Because you didn't know. Right. And frankly – If you'd gone to a lawyer and found out, then it would be a violation. I think that's correct, Your Honor. If there had been any – I'm not saying it should have happened here. I'm just giving that as a – You can't say it's not a violation. It says it's a violation. It just has to be willful. Right. Well, actually, I disagree with that. I take the position – my understanding of copyright law is that if you did what I described, you back up your own game and then had a device used to play it, that you're not violating copyright law, that in fact it's legal to do so. The crime is trafficking in technology primarily designed to circumvent. If you do that, it's a violation of the law as long as it's willful. I think if there's an application of this statute to purely non-copyright violations, I think that there's overbreadth issues, that there's First Amendment issues. You're not making overbreadth, are you? No, because that's not our case. With regard to our case, I just want the court to be certain that there is, in fact, reason to believe that some of these people were using it legally. I think it goes back to the analogy of – Were using it legally or illegally? Legally. I apologize. Some of them were using it. Some of them, certainly. Were using it legally. Right. So there's reason to believe that some people were using it illegally. Unquestionably, Your Honor. Then the issue then becomes – and this was the central issue of trial because there were no statements by Mr. Reichert or other evidence that he had gone to a lawyer or that he had been told, Don't do this. You can't do this. It's illegal. No one ever told him that. That's why deliberate ignorance or willful blindness came into issue. That's why this is the crucial issue in the case. That's why he knew he was in a gray area. There were law review articles suggesting that this could be legal, that selling these products might not be prohibitable. Could you address the special skills? Thank you. Special skills. Your Honor, with regard to your question of why it exists, I don't know. I don't think it's a very – I don't see any rationale for it, but – Well, let's try this then. I guess you could say if you have special knowledge, then you don't have to resort to crime to have a nice life. You can go out and use your special knowledge for good or for yourself and not commit crimes that harm others. So in that sense, it's a little bit more culpable for somebody who has the ability to go out and pilot a plane. To be piloting a plane for criminal purposes seems even less excusable than somebody who doesn't have that alternative. If it's something like that, if it is, then I'm not seeing why – assuming the other arguments are rejected about jury instructions so that he did willfully do this by assumption for him. Why wouldn't that be just as culpable, looking at it that way, as somebody who taught himself how to fly a plane without ever getting a license or going to a licensed school? He just was able to, I don't know, buy a simulator and get a computer and figure out how to fly a plane. Even Uncle in 9-11 did that. So why isn't teaching yourself how to do computer repair, which I think most people in this room would be pretty loathe to feel comfortable doing, is a special skill, just like flying a plane. We all could fly a plane if we got taught or if we spent a year and taught ourselves, but we haven't. What's the difference? And I'm assuming in the question, when I say what's the difference, I'm assuming an unlicensed pilot. With regard to – I want to be clear. The law is, obviously, that self-tutelage can be enough. And then in judging, and I think this case, the issue to me, was his self-tutelage enough? Because not all self-tutelage. No, sure, you can teach yourself to ride a bike or drive a car, and we wouldn't say that was a special skill. But you could teach yourself the programming of a computer or something. If it arises and falls on facts, whether this is or not, isn't that a factual determination by the district judge that we must review under an earlier release date? I think it's a mixed question of law and fact because – We'd give him some deference. I think in terms of when he makes findings of fact – for example, if he was to find that Mr. Reichert spent a year learning this, two years learning it, then I think certainly deference to that. But in terms of – That would clearly be under the clearly wrong instance. Yes. Okay, is there deference here? I think it's mixed with regard to those factual questions of deference, but – What deference do you concede that we should give to the district judge? I think deference with regard to any factual findings, not deference with regard to the application of a law. Okay, so tell me, applied here, what do we give deference to? Well, the judge was pretty sparse in what he said. He indicated something right along the lines of what the government just indicated, which is that it's a novel skill. Not many people can do it. Making a real good omelet is also a novel skill. It's not a special skill. Changing a carburetor, there's not a lot of people who can do that, really, statistically. But you can learn it quickly. You're really out of time here. Tell me what portion of the district court's ruling we give deference, and what portion we don't. What is the deference we give? Is there a right or a wrong? Deference to the factual finding that not many people do this. There are no other factual findings I'm aware of. No deference otherwise. Okay, so we give deference to that under clearly erroneous. Yes. And shouldn't that be enough or not? Oh, no, Your Honor, no. And again, I am over time, but it is definitely our position, assuming that to be true, that – that people can't do this. The issue is whether his self-tutelage is comparable to the examples listed. Pilot, lawyer, doctor, accountant, chemist. Okay, but those are just examples. They're really not the guidelines itself. They're examples. And by example, you look at the language of the guidelines, right? Certainly, Your Honor, yes. But I submit that the reason they put those examples in there was so that you have some idea. Okay, we mean this level of self-tutelage. Going on to YouTube, watching a couple videos. They don't even list somebody that's not licensed in those examples. They're all licensed people. I think that's correct. Okay, so those examples are not exclusive. Obviously, we've ruled that those are not exclusive examples that fit in the guidelines. So therefore, we're not bound by them. Certainly. Yeah, and it's definitely not our argument that because he's not one of the enumerated six things that he doesn't qualify. The argument is that his self-tutelage – first of all, there's no factual findings to support a claim that it is comparable to becoming a chemist. Second of all, learning to modify an Xbox is not that hard, right? It really just isn't. But how hard it is is factual. You can say it's not hard. I can say it's hard. I don't know. I don't see how that's a legal determination of how hard it is. How hard it is has got to be factual, doesn't it? But he didn't make a finding that it was as hard. Right, but he made a decision based on what he had before him. If he had made a factual finding this is equivalent to the difficulty of going to medical school, going to law school, then we would be deferring to that. We don't require that in sentencing determination. Okay, but before we reverse him, you have to say that he was in error, and you're really not pointing to any errors. I mean you're telling me that he applied the correct law, but he wasn't articulate enough. He wasn't specific enough, but I don't see any errors. Without a factual finding to support a legal conclusion that this is as difficult as one of those enumerated, or is in any way remotely comparable to that, then it is an error. Certainly. There ought to be a release and remand. Certainly, Your Honor. Thank you.  The case will be submitted.